**Agnes Ellenwood Smith**

**v.**

**Vincent J. Lentini, Extr., John Molla Estate**

[          ]

February Term, 1966

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed April 5, 1966

Motion for Reargument Denied June 7, 1966

*Davis, Martin & Free* for plaintiff.

*Monti & Eldredge* for defendant estate.

**Keyser, J.** The defendant appealed to the Washington County Court from the action of the commissioners of the Estate of John Molla in allowing a claim presented against the estate by the plaintiff. This claim is in the form of a written instrument which plaintiff contends, and the defendant denies, constitutes a promissory note. Hearing below was by the court. The court found the instrument was a promissory note delivered to the plaintiff by the deceased and properly allowed as a claim against the estate of John Molla by the commissioners of the estate. Judgment was for the plaintiff and defendant's appeal to this court followed.

Viewing the evidence in the light most favorable to the prevailing party, as we must, the following facts appear.

John Molla was an attorney and practiced law in the City of Barre, Vermont for many years. The plaintiff had been in his employ for nearly twenty-five years.

On March 22, 1956, Mr. Molla told plaintiff he was going to make out a note for her. The plaintiff, at Mr. Molla's request, typed out the instrument involved here, Plaintiff's Exhibit No. 1, also referred to by the court as Claimant's Exhibit A. This was done in his office. The plaintiff told Mr. Molla she wanted "a witness to that note." They then drove to the Howard Johnson Resaturant on the road to Montpelier to have Fernando Saldi sign as a witness. Mr. Molla had been attorney for Mr. Saldi for some twenty years. They were also business associates for about ten years in the operation of the Vermonter Motel located to the rear of the above restaurant owned and operated by Saldi. Mr. Molla and Mr. Saldi each signed the instrument in the

latter's office in the restaurant. The plaintiff remained outside in the car near the door of the restaurant. Later Mr. Molla returned to the car accompanied by Mr. Saldi.

The instrument which had been signed in the office was delivered to the plaintiff at that time in the presence of Mr. Saldi. The plaintiff and Mr. Molla then left together in the car. Mrs. Smith, the plaintiff, had the signed instrument in her possession from the time Mr. Molla delivered it to her until she presented it to the commissioners of the estate.

The defendant excepted to certain findings; to the failure of the court to find as requested; to the admission of Plaintiff's Exhibit No. 1, the instrument in question; and to the judgment. The defendant argues these exceptions separately. However, in broad outline, the fundamental issue raised by these exceptions is whether or not this instrument contains all the essential requirements to establish it as a promissory note.

This court must affirm the findings if there is any credible evidence to support them, and must construe those findings so as to support the judgment, if possible. *Cross-Abbott* v. *Howards, Inc.,* 124 Vt. 439 445, 207 A.2d 134. The evidence considered as a whole must be read in support of the findings, if reasonably possible. The weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony lies solely with the trier of facts. *Little* v. *Little,* 124 Vt., 178, 182, 200 A.2d 276.

The instrument in question, Plaintiff's Exhibit No. 1, is in the following terms:

"30,000.00                          Barre, Vermont, March 22, 1956

On demand, after my decease I direct by Executor to pay to the order of Agnes Ellenwood Smith, my secretary, the sum of,

............ ............ THIRTY THOUSAND DOLLARS ......... . .......... ...

out of my estate.

In presence of:

Fernando Saldi                    John Molla"

Findings No. 5 and No. 6 excepted to by the defendant read:

"5) In consideration of the provisions of 9 V.S.A. Chapter 21, Sub Chapter 1, commonly known as the 'Negotiable Instruments Law,' and the fact that no affirmative defenses were filed by the

Estate, the Court finds Claimant's Exhibit A to be a negotiable instrument and expressly finds Claimant's Exhibit A to be supported by consideration upon the authority of 9 V.S.A., 351.

6) Counsel for the Claimant may prepare an order providing that the instrument, Claimant's Exhibit A, is found to be a negotiable promissory note and as such is not a testamentary instrument violative of the Statute of Wills. Such orders should further provide that the allowance of this claim by the Commissioners of the Estate is affirmed, and this cause may be certified to the Probate Court for the District of Washington."

The Negotiable Instrument Act, Chapter 21 of Title 9, V.S.A., §301, prescribes the form of a negotiable instrument:

"An instrument to be negotiable must conform to the following requirements:

(1) It must be in writing and signed by the maker or drawer;

(2) must contain an unconditional promise or order to pay a sum certain in money;

(3) must be payable on demand or at a fixed or determinable future time;

(4) must be payable to order or to bearer; and

(5) where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

The defendant contends that there was no consideration for the instrument; also that the plaintiff did not introduce any evidence to show consideration. This question was raised by defendant's request to find that "there was no consideration passing between the plaintiff and John Molla at anytime for the execution of said instrument."

There were no pleadings filed by either party — the plaintiff as to the nature of her claim, or the defendant as to any affirmative defenses required by 12 V.S.A. §1024. Plaintiff claims defendant did not plead or prove the affirmative defense of failure of consideration. Defendant counters this argument by saying he had no duty in this respect until plaintiff *"produced or pleaded* an instrument that constituted a promissory note."

In *Robinson* v. *Executors of Robinson,* 32 Vt. 739, 740, the court said:

"In *Hodges, Executor* v. *Thacher et al.,* 23 Vt. 455, the court held that the probate court have a discretion as to accepting or re-

jecting a report of commissioners that is returned to the court, as well for matters that do not appear as for those apparent on the face of the report; and may re-commit the report to the commissioners if necessary, and that the decision of the commissioners does not become an adjudication in contemplation of law, until returned and accepted by the probate court. It is the decree of the probate court accepting the report and ordering it to be recorded that makes it a final decision — a judgment and record. In this view of the effect of the decree, we think the prayer for an appeal is sufficient if it is expressed as praying for an appeal either from the decree of the court accepting the report, or from the decision and report of the commissioners.

The appeal from the decision and report of the commissioners allowed by 12 V.S.A. §2556 is in effect an appeal from the order and decree of the probate court ordering that such report be allowed and recorded. This statute requires that the notice of appeal be filed with the register of the probate court within thirty days after the return of the commissioner's report. No. 261, §60, Acts of 1959.

12 V.S.A. §2384 governs appeals to county court from probate court. This statute requires that the appellant shall file in the county court, within thirty days after his notice of appeal is filed, a statement of those questions which he desires to have determined. Issue may then be joined under the direction of the county court.

In these proceedings, since the appellant in county court was the executor of John Molla Estate, it was incumbent upon him to file a statement of those questions of law or fact which he sought to have determined on appeal. This he failed to do.

However, at the time of hearing, preliminary to the introduction of testimony, plaintiff's attorney upon inquiry by the court responded that the claim had always been on a note. Defendant's attorney stated the instrument was not a note and that the dispute was to determine whether or not it was an actionable instrument. The court and defendant were thus informed as to the nature and form of plaintiff's claim. The case then proceeded to hearing de novo on the issues thus framed under the direction of the court after this understanding was reached. It is apparent from the record that counsel acquiesced in this procedure being adopted.

At the close of witness Saldi's testimony, plaintiff offered the instrument "as a promissory note." Under that offer, the court received it into evidence over the objections of the defendant. The defendant's

objections did not go to the question, or defense, of failure of consideration but rather related to other grounds. His attorney stated he was not questioning the execution of the instrument and that it was signed by John Molla. The court then admitted the instrument under the offer made by plaintiff.

The instrument was payable "to the order of" the plaintiff which meets the requirement for negotiability under 9 V.S.A. §301 (4).

Title 9 V.S.A. §351 provides:

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

Whether or not pleadings were filed, as the case then stood after the negotiable instrument was received in evidence, the burden of proof then shifted to the defendant to produce evidence on the issue of a failure or lack of consideration. Section 355 of 9 V.S.A. provides that absence or failure of consideration is matter of defense as against any person not a holder in due course. Defendant's argument overlooks the foregoing provisions of the Negotiable Instruments Act. We said in *Greenwood* v. *Lamson,* 106 Vt. 37, 43, 168 Atl. 915, "These provisions of the Act expressly cast upon the party asserting absence or failure of consideration the burden of establishing the issue by pleadings and proof." See also *Browne* v. *Fine,* 104 Vt. 221, 228, 158 Atl. 669. In the instant case, it follows that the defendant was at least required to produce evidence in proof of his contention.

A careful search of the record fails to disclose any evidence introduced by the defendant which relates to an absence or failure of consideration. The defendant by his request to find no consideration was raising for the first time a defense or issue which he had not raised during trial. The instrument does recite that it is payable to "Agnes Ellenwood Smith, my secretary." She was in the employment of attorney Molla for nearly twenty-five years. From this it could be inferred that past, as well as future services was the consideration of the instrument.

Furthermore, the plaintiff was prevented by defendant's objection from offering testimony of witness Saldi on this matter of consideration. The evidence offered was that Mr. Molla stated to the witness that he was delivering this note to Mrs. Smith to pay her for services rendered for which he had not paid her. The defendant's objection was that the evidence was immaterial and that the "instrument speaks for itself" and he can't "enlarge on what appears therein."

We find nothing in the record to show a want of consideration or any evidence which overcomes the force and effect of 9 V.S.A. §351. It is clear that the trial court settled any issue of consideration entirely on the presumption created by force of the Negotiable Instruments Law. On the record presented here this was entirely proper. There is no error in Finding No. 5 respecting this question of consideration.

The defendant also argues that the instrument is not negotiable under 9 V.S.A. §301 (2), supra, because it contains no promise to pay. He claims error by the court's refusal to find as he requested that it is not a promissory note and by the finding that it is such. He asserts because the instrument states "I direct my Executor to pay" that this is merely a direction to his executor to pay the sum specified to Mrs. Smith. He further claims this was not binding on the defendant executor.

"To direct" or "give direction" is to "give an order"; "to instruct authoritatively"; "to command." Webster's Third New International Dictionary. "Direct" is synonymous with "command." *State* v. *Hendrix,* 59 Ariz. 184, 124 P. 2d 768, 771; *Calder* v. *Curry,* 17 R. I. 610, 615, 24 Atl. 103, 105; 15 C.J.S., Compel, p. 650, note 48. There are various other definitions given, but we think these are peculiarly applicable in the sense, and on the circumstances, under which the word is used in the instrument.

In *Brown* v. *Mead,* 121 Conn. 1, 183 Atl. 27, the court held that the words "I direct" as used in a trust was to express the general duty to be imposed upon the trustees with reference to the payment of yearly sums of money.

The word "direct" implies the exercise of power and authority; and has been said to connote a mandate. 26A C.J.S. p. 951, notes 76, 76.5; *In re Mills Estate,* 64 N.Y.S. 2d 105, 109, 189 Misc. 136; *Thissell* v. *Schillinger,* 186 Mass. 180, 71 N.E. 300, 301; *Collister* v. *Fassitt,* 39 N.Y.S. 800, 801, 7 App. Div. 20.

It is not necessary that the promise to pay in a note be stated in express terms if it can be fairly gathered from the writing itself. 10 C.J.S., Bills and Notes, §84 (a), note 60. Any form of expression is sufficient from which it can be deduced a direct undertaking to pay the sum specified. . . . Id note 61. See also 11 Am. Jur. 2d, Bills and Notes, §139, note 4. By the execution of the instrument attorney Molla not only acknowledged, but also agreed to pay, an obligation to that extent to Mrs Smith who had served as his secretary over a long period of time.

Our court has held that an instrument in the words: "Due Simon Pindar or bearer, thirty-eight dollars and seventy-five cents, for value received," is a note in the negotiable form. *Pindar* v. *Barlow*, 31 Vt. 529, 534.

Considering the apparent intention of the maker as gathered from the entire instrument, as well as the context in which the word "direct" is used, it does connote, in our opinion, a mandate upon the executor to pay.

There is a clear implication of the maker's intention in the light of the circumstances under which the instrument was given that payment was to be obligatory and not discretionary. As used, we think this is the meaning and force of the words "I direct." It is of such significance that the executor cannot escape from making payment out of the maker's estate as directed. The direction to pay is clear and imperative and is in no sense discretionary or limited. This result is strengthened by the rule construing a doubtful provision against the party (here attorney Molla) responsible for drafting it. *Page* v. *Hall*, 125 Vt. 275, 279, 214 A.2d 459.

■ It follows that if the executor is bound to pay the note, this is equivalent to a promise to pay by the maker. In *Smith* v. *Allen*, 5 Day (Conn.) 337, the words "on demand" were held to import and to be an express promise to pay.

The promise or order to pay is required to be unconditional by 9 V.S.A. §301 (2). It is provided by 9 V.S.A. §303:

"An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or with a statement of the transaction which gives rise to the instrument; but an order or promise to pay out of a particular fund is not unconditional."

■ The fact that the instrument was payable at the death of the maker does not make it void for uncertainty. *Dorsey* v. *Hudmon*, 179 Ala. 520, 60 So. 303; *In re Beatty's Estate* v. *Western College*, 177 Ill. 280, 52 N.E. 432, 42 L.R.A. 797; *Bristol* v. *Warner*, 19 Conn. 7. Nor does postponement of payment of a valid note until, or after, death render the note invalid or void for uncertainty. Anno. 2 A.L.R. 1471; 11 Am. Jur. 2d Bills and Notes, §172.

Clearly, an instrument payable on demand after death, an event

which inevitably will come to pass, has as certain a due date as one payable upon a designated date. See *Martin* v. *Stone*, 67 N.H. 367, 29 Atl. 845; 9 V.S.A. §304 (3).

■ The provision that the note should be paid "out of my estate," states only what would necessarily be the case at the maturity of the note, and it nowise limits the unconditional promise. *Maze* v. *Baird*, 89 Mo. App. 348, 353; *Simon* v. *Pine Bluff Trust Company*, 99 Ark. 523, 528, 138 S.W. 986; 10 C.J.S., Bills and Notes, §86 (e), p. 533; 11 Am. Jur. 2d, Bills and Notes, §149. It is clear from the instrument itself that the maker was pledging his own credit and not merely that of his estate.

The court held in *Martin* v. *Stone*, supra, that the phrase "to be allowed at my decease" contained in an instrument, held in form and substance to be a negotiable promissory note, could have been omitted without changing the meaning.

■ Neither does the mere fact that the instrument postpones payment until "on demand after my decease" operate to give it character as a will or testament. Anno. 2 A.L.R. 1471, 1473.

> In *Lawrence* v. *Scurry*, 187 Iowa 1055, the court held at p. 1058: "In our opinion, the instrument is in no sense testamentary in character, notwithstanding the fact that it does not contain a specific promise to pay. It is, in form, an order upon the executor to pay the amount at the death of the maker. In all other respects, it is in the usual and ordinary form of a promissory note, and is treated as such by the parties, except for the contention of counsel for appellant that it is testamentary in character."

> And in *Dorsey* v. *Hudmon*, supra, the court said at p. 524:

> "The mere fact that a note is payable upon the death of the maker, or at a certain day after the death of the maker, does not make it a testamentary paper, nor constitute it a will in such sense as to require its execution in accordance with the statute of wills. It is an obligation to pay, and, being delivered to the payee as an evidence of debt, and being made payable to order, it is a promissory note. *Bristol* v. *Warner*, 19 Conn. 7."

■ The note here is not an attempt to make a testamentary disposition of property for the simple reason that it contains no provisions or attributes resembling those of a will. But rather it does have all the essential features of a negotiable instrument. It is a written obligation to pay, and, being delivered to the payee as an evidence of debt, and

being payable to order for a sum certain at a fixed or determinable future time, it satisfies the requirements of 9 V.S.A. §301.

Holding as we do that the instrument is a valid negotiable unconditional promise to pay makes it unnecessary for us to consider whether or not it is an inland or foreign bill of exchange or an attempted gift. The failure of the court to find as requested by defendant on these points is without error.

Findings No. 5 and No. 6 are supported by the evidence and are affirmed. *Cross-Abbott* v. *Howards, Inc,* supra. In congruity, the denial of defendant's motion to delete these findings as not supported by the evidence is without error.

Defendant asserts that there was no delivery of the document in question to the plaintiff. This is contrary to Finding No. 2. There is adequate support in the evidence for this finding and will not be disturbed by this court. *Davis* v. *Kneeland Lumber Co.,* 124 Vt. 70, 72, 196 A.2d 572.

The court stated in Finding No. 4 that "no evidence was introduced from which the Court can make a finding with respect to date demand was made on the above instrument." The defendant claims there is no finding that any demand was made as a consequence of which the instrument is a "valueless piece of paper." However, such is not the fact. Inferentially, the court in effect did find a demand was made. This resulted when the note was presented to the commissioners of the estate for allowance which was in accordance with the procedure prescribed by statute. It was only the date on which it was thus presented that was lacking in the evidence. This in no way affects the legality of the note.

In cross-examination of witness Saldi, he was asked, "Do you know, prior to the time Mr. Molla died, he claimed you owed him between $5000 and $6000 for attorney's fees?" On objection the court excluded the question. Defendant claims this was prejudicial error as being a limitation of his right of cross-examination.

This matter of attorney fees was outside the main concern of the litigation. In this situation the exercise of discretion of the court was brought into play. The control of cross-examination is within the discretionary power and control of the court. *State* v. *Teitle,* 117 Vt., 190, 196, 90 A.2d 562; *Ackerman* v. *Kogut,* 117 Vt. 40, 50, 84 A.2d 131.

The apparent purpose of this cross-examination was to attack

the credibility of the witness. Where it is sought to discredit a witness by inquiries regarding an issue outside the main concern of the litigation, it is in the discretion of the trial court to limit such inquiries. *Gibson* v. *Mackin Constr. Co.*, 123 Vt. 287, 289, 187 A.2d 337 and *State* v. *Teitle*, supra, at p. 196.

Disregarding the ruling of the court, the examiner still pursued the subject matter of attorney's fees by asking the witness whether Mr. Molla made some claims against him for attorney's fees previous to his death and whether the witness knew Molla had any such claims against him. Both of these inquiries were answered in the negative. He further interrogated the witness regarding claims he filed against the Molla Estate which the witness testified were settled. The witness was also asked whether a large number of these claims were completely unfounded, the answer also being in the negative.

It is clear from the record that the examiner obtained answers to all of his questions and the question excluded was substantially answered by subsequent cross-examination. Under these circumstances, prejudice is not made to appear. *Gaylord* v. *Hoar*, 122 Vt. 143, 146, 165 A.2d 358; 58 Am. Jur., Witnesses, §621. p. 343.

Furthermore, in his examination of the witness covering the same subject matter excluded, the defendant was bound by the answers elicited from the witness and could not contradict them by independent proof. *State* v. *Teitle*, supra, at p. 196, citing *State* v. *Long*, 95 Vt. 485, 492, 115 Atl. 734.

Defendant urges the court committed prejudicial error by permitting the plaintiff to testify over defendant's objection. He objected on two grounds. Defendant claims the plaintiff was disqualified to testify in her own favor because (1) the other party to the transaction was dead, 12 V.S.A. §1602 and (2) the executor was a party to the action, 12 V.S.A. §1603. Each of these sections embodies an exception where the testimony of the party is "to meet or explain the testimony of living witnesses produced against him."

The defendant introduced evidence through a living witness concerning the note. This witness testified that he had a conversation with the plaintiff in April 1960 and made a memorandum of his conversation. Refreshing his memory from the memorandum, he testified that plaintiff told him she found the note for $30,000 in the office safe after Mr. Molla's death. It was in rebuttal of his evidence that plaintiff was called as witness. The court permitted her to testify to facts concerning the delivery of the note to her and her possession

of it, also her conversation with that witness. Her testimony was competent to show the fact was otherwise than defendant's witness had testified.

In *Paska* v. *Saunders*, 103 Vt. 204, 153 Atl. 451, the court said at p. 211, "The exception in the statute which makes the surviving party a competent witness to meet or explain testimony of living witnesses produced against him permits him to testify to such affirmative facts as have a tendency to meet and destroy such testimony" and "also any legitimate inference deducible therefrom." Cases cited.

The defendant cites as authority *McPherson* v. *Dow Admr.*, 117 Vt. 506, 96 A.2d 649, and *Nottbeck* v. *Chapman*, 93 Vt. 378, 108 Atl. 338. These cases do not support defendant's position. The exception in the statute applies when the living witness is one produced *against* the plaintiff. That is the situation in this case since the testimony sought to be explained was from a witness produced against the plaintiff.

Defendant claims the admission of plaintiff's testimony was prejudicial because the court must have relied upon this evidence and considered it in making the finding that there was a delivery of the note to the plaintiff. However, there was earlier testimony on this matter of the delivery of the note given by witness Saldi. He testified that he went out to the car with Attorney Molla, after each of them had signed the note in Saldi's office, and saw Molla hand the note to the plaintiff.

We do not find error in the ruling of the court, but if there was any, it was harmless.

The defendant further argues that it was error for the court to enter judgment for the plaintiff. This presupposes that defendant's requested findings were made by the court, principally that the instrument was not a note. The findings were to the contrary and, as we have held supra, are without error. Accordingly, the judgment is amply supported by the findings and will be affirmed.

*Judgment Affirmed.*

NOTE: After the opinion was filed in this case, the defendant was granted an extension of time to petition for reargument. The motion which followed seeks further consideration of all questions decided adversely to the defendant and are not within the spirit and purpose of Rule 22.

The final point presented contends that the opinion failed to observe the difference between a promissory note and a bill of exchange.

The language of the instrument is not definitive on the point. The plaintiff regarded the obligation as a promissory note. This she was entitled to do since 9 V.S.A. §317 (a) provides that when the instrument is ambiguous as to whether it is a bill or a note the holder may treat it as either.

However classified, the critical and controlling point is the finding by the court below that the writing was a negotiable instrument within the requirements of the Uniform Negotiable Instruments Act 9 V.S.A. §301. As such it carried the presumption that it was issued for a valuable consideration. And this presumption, the defendant has left unchallenged in the evidence.

The opinion was recalled to make minor corrections but the result reached is not affected.

*Request for permission to reargue is denied. Let full entry go down.*